**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**VERRO LOVE,**
2871 Chalkstone Place
Waldorf, MD 20601

**ISABEL VEGA,**
231 54th Street NE
Washington, DC 20019

**JAMES WILLIAMS JR.,**
5518 Frazier Terrace
Temple Hills, MD 20748

**LANAYE BRUTUS,**
1910 Meadowgate Court
Windsor Mill, MD 21244

*on behalf of themselves and all others similarly situated*

*Plaintiffs*,

v.

**THE DISTRICT OF COLUMBIA,**
John A. Wilson Building
1350 Pennsylvania Ave., NW
Washington, DC 20004

*Defendant.*

Civil Action No: 1:26-cv-02492-MAU

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Named Plaintiffs Verro Love, Isabel Vega, James Williams Jr., and Lanaye Brutus (collectively "Plaintiffs") on behalf of themselves and others similarly situated, by and through their attorneys, hereby allege against Defendant the District of Columbia ("DC" or "the City") as follows:

## INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, the District of Columbia, who work or have worked as a Correction Officer for the Department of Corrections ("DOC") at the Central Detention Facility ("CDF") or the Correctional Treatment Facility ("CTF"), located in the District of Columbia.

2. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the D.C. Minimum Wage Act Revision Act ("MWRA"), D.C. Code §§ 32-1001 *et seq.*, seeking backpay, liquidated damages, interest, attorneys' fees and costs, and all other relief to which they and all others similarly situated are entitled. Plaintiffs and those similarly situated have been subject to the same policies and/or practices that violate the FLSA and MWRA whereby Defendant has failed to pay them for overtime work in a timely manner, or at all.

## PARTIES

3. Plaintiffs have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Their written consent forms, which contain each Plaintiff's name and address, are set forth in Exhibit A.

4. Each of the Plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), and the MWRA, D.C. Code § 32-1002(2).

5. Defendant District of Columbia operates the Department of Corrections and is an employer under MWRA, D.C. Code § 32-1002(3).

6. Defendant District of Columbia is a public agency within the meaning of Sections 203(d) and 203(x) of the FLSA, 29 U.S.C. § 203(d), (x).

7. The District of Columbia has a principal office and place of business located at 1350 Pennsylvania Avenue, NW, Washington, DC 20004, and may be served with process by serving The Office of the Attorney General, 400 6th Street, NW, Washington, DC 20001.

## JURISDICTION AND VENUE

8. Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and § 1367(a) (supplemental jurisdiction to entertain claims in Count I).

9. Venue lies within this district pursuant to 28 U.S.C. § 1391.

## FACTS

10. Plaintiffs are, and all times material have been, employed by Defendant in the position of Correction Officer at various locations and assignments at the DOC facilities.

11. The District of Columbia DOC is comprised of two facilities: (1) Central Detention Facility ("CDF") and (2) Correctional Treatment Facility ("CTF") (collectively "the Facilities"). Between the two Facilities, DOC is responsible for detaining a daily population of approximately 3,500 individuals.

12. At all times material, Plaintiffs Verro Love Isabel Vega, and Lanaye Brutus have worked as Correction Officers assigned to the CTF. Plaintiff Williams worked as a Correction Officer in the CDF until August 2024.

13. The Facilities are staffed 24 hours per day, 365 days per year by Correction Officers, including Plaintiffs. The Correction Officers' principal activity is maintaining the safety and security of the Facilities. They are charged with performing this principal activity every moment that they are within the Facilities, from the moment they begin clearing the mandatory security screening prior to their scheduled shifts until they exit the secure confines of the

Facilities after their scheduled shifts end. They are required by the employer to clear the staff screening site in advance of their shift, but they are not paid for this time.

14. Plaintiffs are required to carry out their principal activity of maintaining the safety and security of the Facilities by observing and inspecting surroundings for conditions which threaten safety and security, including searching for contraband and other safety concerns; immediately responding to emergencies; conducting visual and manual searches in order to detect contraband as appropriate; supervising detainee meals, visits, recreational programs, and/or other activities; completing forms, reports, and appropriate logs; communicating with other Correction Officers to exchange pertinent information; and ensuring the safety of detainees, coworkers, as well as DOC supplies and equipment.

15. Plaintiffs work five 8.5-hour shifts per week, which includes a 30-minute unpaid meal break each shift. As a result, Plaintiffs are regularly assigned to work 40 scheduled hours each week.

16. For example, Plaintiff Vega's regular schedule is from 7:30 a.m. to 4:00 p.m., Thursday through Monday each week, inclusive of a 30-minute unpaid meal period each shift.

17. Plaintiffs and all others similarly situated Correction Officers routinely work over 40 hours a week. However, Defendant fails to compensate Plaintiffs for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rate of pay.

18. In those instances when Defendant does pay for overtime work, it often delays overtime payments beyond Plaintiffs' next regular payday.

***<u>Uncompensated Work Performed by Plaintiffs</u>***

19. Defendant has suffered or permitted Plaintiffs to work approximately 15-25 minutes prior to the start of their scheduled shifts and approximately 20-30 minutes after the end

of their scheduled shifts each day. Defendant has also suffered or permitted Plaintiffs to work through their 30-minute unpaid meal break, on average, 3 days per week. Defendant does not compensate Plaintiffs for this additional work time outside their regularly scheduled shifts.

20. Plaintiffs perform their principal activities, which include, but are not limited to, those duties enumerated in Paragraph 14, prior to and after their scheduled shifts.

21. For example, prior to their scheduled shifts, Correction Officers engage in required, necessary, integral, and indispensable tasks such as: consistent with a principal activity of ensuring no contraband enters the facility, participating in the employer-mandated staff screening specifically designed by Defendant to ensure that contraband is not introduced into their assigned facility; collecting equipment that they are required to carry on their person during their shifts, such as body-worn cameras; and collecting and donning required protective clothing and equipment. Correction Officers must necessarily perform this work prior to their paid time because of, for example, Defendant's policy requiring them to attend roll call immediately at the start of their paid shift.

22. Failure to attend roll call immediately at the start of their paid shift results in Defendant docking Plaintiffs' pay.

23. On a daily basis, Correction Officers begin their unpaid pre-shift work when they start the process of clearing the required staff screening site at the entrance of their assigned facility. When going through the process of clearing the security site, Correction Officers perform their principal activity of ensuring the safety of the facility, staff, and DOC equipment by ensuring that no contraband enters the facility.

24. Correction Officers then continue to perform unpaid work as they retrieve required equipment, such as radios and oleoresin capsicum spray ("OC spray"), and don their required equipment, including body-worn cameras.

25. In total, Defendant requires Correction Officers to perform approximately 15-25 minutes of unpaid work before each of their scheduled shifts, in addition to their regularly scheduled 40 hours.

26. Similarly, Correction Officers are routinely relieved from their post 20-30 minutes after the end of their scheduled shift and are not paid for this time.

27. In order to maintain the security of the facility, Correction Officers are not permitted to leave their assigned post until another Correction Officer arrives to relieve them.

28. While on post, Correction Officers continue to perform their required principal activities, including, but not limited to, supervising and monitoring inmates; remaining vigilant, alert, and ready to respond to emergencies; observing and correcting inmate behavior; searching for contraband; and responding to emergencies.

29. As such, Correction Officers are required to perform up to 30 minutes of unpaid work after each regularly scheduled shift, in addition to their regularly scheduled 40 hours.

30. Further, Defendant has suffered or permitted Correction Officers to work, without additional pay, when they do not receive a full, duty-free meal period, which happens on a frequent basis.

31. Correction Officers, on average, are not relieved from their post for a meal break, and/or otherwise do not receive a duty-free meal period three days per week. As a result, Correction Officers must eat their meal while performing all of their required duties on post, including, but not limited to, the duties enumerated in Paragraph 28.

32. When Correction Officers do receive a meal break, they are frequently interrupted by work. For example, when an alarm sounds in the Facilities, any available Correction Officer must respond, regardless of whether they are on break.

33. Correction Officers, despite receiving no duty-free meal break, are not paid for their additional work.

34. Although Defendant should have been aware of – and in fact is aware of this additional overtime work performed by Plaintiffs – Defendant has failed to compensate them for it.

35. The amount of uncompensated work hours for which Plaintiffs have not been paid can be identified through the Defendant's timekeeping system and through other evidence, such as Defendant's other work and pay records.

***Unpaid Overtime During Weather Emergencies***

36. Defendant has failed to pay Plaintiffs for all working time at a rate of 1.5 times the regular rate of pay for hours worked over 40 in a workweek during weather emergencies in which Correction Officers are required to stay overnight at the DOC facilities.

37. For example, in January 2026, the District of Columbia experienced a serious snowstorm that left approximately 9 inches of snow and ice, making travel through the city difficult—if not impossible—for several days.

38. During this time, Correction Officers were "drafted," or required to work overtime shifts in addition to their normally scheduled 40-hour workweek and were required to remain on site for several days.

39. For example, Plaintiff Brutus was "drafted" for multiple shifts during the January 2026 snowstorm. Over the course of three days, Plaintiff Brutus worked a total of 54 consecutive hours.

40. Defendant provided cots for Correction Officers to sleep on between their scheduled shifts during the length of the weather emergency.

41. During their designated rest times, Plaintiffs were still required to respond to emergencies or alarms repeatedly.

42. As a result, Plaintiffs did not receive 5 hours of uninterrupted sleep on any night during the snow emergency.

43. Despite the repeated interruptions to Plaintiffs' sleep time for several days, Defendant paid Plaintiffs for 8 hours of "rest time" each day at only half-time pay.

44. Plaintiff Brutus was paid only half-time for 14 of her 54 hours of work during the snowstorm in January 2026.

45. That week, Plaintiff Brutus worked at least 30 mandatory overtime hours, in addition to her normally scheduled 40-hour workweek, but received overtime compensation for only 16 of those hours.

46. There is no agreement between Defendant and Plaintiffs to exclude sleep time from compensable hours worked.

***<u>Late Payment of Overtime</u>***

47. Plaintiffs routinely work overtime, but Defendant often unreasonably delays approval of payment for that overtime work or otherwise delays payment to Correction Officers for their overtime work.

48. Correction Officers record each overtime shift they work on a paper "overtime slip," which is submitted to supervisors at the end of the overtime shift for approval.

49. Despite submitting these overtime slips immediately after the overtime is worked, the approval of overtime is routinely delayed by Plaintiffs' supervisors, DOC management, and/or the timekeeping department.

50. As a result, overtime payments are frequently made an entire pay period, weeks, or even months later than the due date on which Plaintiffs have been paid for their non-overtime work hours for that week.

51. At all times material, Defendant has violated basic prompt payment principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek by weeks, and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends.

52. The extent of damages owed resulting from late overtime payments to Correction Officers can be identified through the Defendant's timekeeping system and through other evidence, such as other work and pay records that Defendant maintains.

***Defendant's Violations Are Willful***

53. Correction Officers' supervisors observe them arrive before their scheduled shift start times. During the unpaid time prior to the scheduled shift, supervisors observe Correction Officers undergo staff screening at the entrance of the facility and perform work tasks including such tasks as collecting and donning required equipment.

54. Correction Officers are expected to attend roll call commencing at the exact start time of each assigned shift, by which time the Correction Officers must be ready to perform

work duties. Correction Officers who do not report for roll call at the precise start time of their shift are marked “absent without leave” (“AWOL”) and docked pay.

55. While Defendant’s timesheets could show actual arrival times, generally, they do not. This is because Correction Officers are instructed to record only their scheduled shift start times rather than their actual pre-shift arrival times.

56. Defendant fails to pay Correction Officers on a minute-by-minute basis for this pre-shift work time, despite being on notice, through the supervisors’ observations, of the precise amount of unpaid overtime that Plaintiffs and all others similarly situated work each day. Additionally, Defendant is aware that it requires Plaintiffs to clear a screening site and perform work tasks described in Paragraph 21 above in advance of roll call. Defendant pays Plaintiffs and all others similarly situated based only on their scheduled shift hours and any prescheduled overtime hours, and does not pay overtime for required pre-shift, post-shift, and meal period work.

57. Defendant utilizes timekeeping software to administer and calculate the pay of Plaintiffs and all others similarly situated. However, Plaintiffs do not punch in or out of the timekeeping system. Instead, they submit paper timecards and Defendant only pays Correction Officers for their scheduled shifts (unless they are late, in which case they are docked pay).

58. Similarly, Defendant is aware when Correction Officers perform work after their scheduled shift ends or during their meal periods because Correction Officers are required to stay on post until they are relieved. As a result, unless and until supervisors assign a relief officer, Correction Officers are forced to work unpaid overtime or face discipline for abandoning their post.

59. Defendant is further aware when Correction Officers are not provided with a duty-free meal period because meal relief officers – and the absence of them – are indicated in paperwork that supervisors complete on each shift. This paperwork indicates for each shift whether Correction Officers received a duty-free meal period. Despite written records that demonstrate that Plaintiffs and others similarly situated worked through their duty-free meal, and Defendant's knowledge of that fact, Defendant fails to pay overtime for this meal period work.

60. Defendant has not disciplined any Correction Officer for performing unpaid overtime before or after their scheduled shift hours or during their unpaid meal breaks.

61. Plaintiffs and those similarly situated have complained to supervisors and the timekeeping department about the late and unpaid overtime problems. Yet, the compensation issues persist.

62. In doing so, Defendant has shifted the burden for the FLSA, MWRA, and timekeeping compliance onto the employees, as Plaintiffs and all others similarly situated are sometimes only paid for their overtime (albeit, paid late) if they make complaints.

## COLLECTIVE ACTION ALLEGATIONS

63. All Corrections Officers employed by Defendant in CTF and CDF are similarly situated and regularly scheduled to work at least 40 hours in a workweek. These Correction Officers are denied compensation for the pre-shift work they perform pursuant to Defendant's adoption of a "pay-to-schedule" policy which does not compensate for work time performed outside of the scheduled shift.

64. The Correction Officers are similarly situated to each other and to the Plaintiffs because they perform work during their unpaid meal breaks pursuant to Defendant's policy of

automatically deducting pay for a meal break, while, at the same time, suffering or permitting Correction Officers to perform work during some or all of such unpaid meal breaks.

65. The Correction Officers are similarly situated to each other and to the Plaintiffs because they are all subject to Defendant's policy or practice of failing to promptly pay for overtime work.

66. Correction Officers are all subject to Defendant's same practice and policy of using Defendant's timekeeping and payroll system to administer and calculate their pay.

67. Defendant has violated the overtime provisions of the FLSA, 29 U.S.C. § 207(a) and 29 C.F.R. § 778.106, resulting in damages to Plaintiffs and those similarly situated, in the form of unpaid wages, liquidated damages, incurred and incurring costs, and reasonable attorneys' fees.

68. Defendant's violation of the FLSA is willful and not in good faith for all members of the putative collective.

69. Similarly situated Correction Officers would benefit from the issuance of court-issued supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

70. All Correction Officers are similarly situated, and Plaintiffs will request that this Court certify a collective composed of: All employees of Defendant who have worked as a Correction Officer for the Department of Corrections in the Central Detention Facility ("CDF") or Correctional Treatment Facility ("CTF") at any time since July 16, 2023.

## CLASS ACTION ALLEGATIONS

71. Pursuant to Federal Rules of Civil Procedure Rule 23, Plaintiffs provide the following information about their allegations on behalf of a class of current and former Correction Officers who have worked for the District of Columbia Department of Corrections

and who assert claims under the District of Columbia Minimum Wage Act Revision Act ("MWRA"), D.C. Code §§ 32-1001 *et seq.*, for unpaid overtime at the legally required rate plus liquidated damages (three times the unpaid wages).

72. The MWRA Class is defined as follows:

> All current and former District of Columbia employees who have worked as a Correction Officer for the Department of Corrections in the Central Detention Facility ("CDF") or Correctional Treatment Facility ("CTF") since July 16, 2023.

73. Pursuant to Fed. R. Civ. P. 23(a)(1), the Class contains over 750 current and former employees who were not paid for all overtime hours. This Class is "so numerous that joinder of all members is impracticable."

74. Pursuant to Fed. R. Civ. P. 23(a)(2), "there are questions of law or fact common to the class," including, but not limited to:

(a) Whether Defendant violated the MWRA, D.C. Code § 32-1003(c), by failing to pay Class Members at one and one-half times their regular rate of pay for all hours worked over 40 per week;

(b) Whether, as a result of Defendant's violations of the MWRA, Plaintiffs and the members of the Class have suffered damages by failing to receive their lawful wages during their employment with Defendant and are entitled to additional amount equal to three times the amount of unpaid wages pursuant to D.C. Code § 32-1308(a)(1)(A)(ii); and

(c) Whether, as a result of Defendant's violations of the MWRA, Plaintiffs and the members of the Class are also entitled to an award of attorneys' fees and expenses.

75. Pursuant to Fed. R. Civ. P. 23(a)(3), the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Plaintiffs' claims are typical of those of Class Members whom they seek to represent.

76. Pursuant to Fed. R. Civ. P. 23(a)(4), "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs are adequate Class representatives, are committed to pursuing this action, and they have retained competent counsel experienced in wage and hour law and class action litigation by retaining the undersigned counsel.

**COUNT I**
**Failure to Pay Overtime for All Hours Plaintiffs Are Suffered or Permitted to Work in Violation of D.C. CODE § 32-1308 (Minimum Wage Act Revision Act ("MWRA"))**

77. Plaintiffs repeat and incorporate by reference the factual allegations set forth in paragraphs 1-73.

78. Pursuant to D.C. Code § 32-1003(c), if employees are employed for more than 40 hours per week, they must receive 1.5 times the regular rate of pay for all hours worked in excess of 40 hours.

79. At all times material herein, during those workweeks in which Plaintiffs have worked in excess of 40 hours a week, they have performed work activities without compensation before and after their scheduled shifts and during their unpaid meal breaks. This additional, daily work has caused Plaintiffs to work in excess of 40 hours in a week without proper overtime compensation in violation of the MWRA, D.C. Code § 32-1003(c).

80. Likewise, Defendant has failed to compensate Plaintiffs at a rate of 1.5 times their regular rate of pay for all hours worked during a snowstorm in January 2026, pursuant to D.C. Code § 32-1002 (defining "working time" as time the employee "is required to be on the employer's premises, on duty, or at a prescribed place," and incorporating federal regulations

under 29 C.F.R. Part 785), 29 C.F.R. § 785.22(a) ("Where no expressed or implied agreement . . . is present, the 8 hours of sleeping time and lunch periods constitute hours worked"), 29 C.F.R. § 785.22(b) ("If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted").

81. As a result of Defendant's violations of the MWRA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs are in the exclusive possession, custody, and control of the Defendant and its public agencies and the Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the MWRA.

82. Defendant is under a duty imposed by the MWRA, D.C. Code § 32-1008(a)(1), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs from which the amount of Defendant's liability can be ascertained.

83. Pursuant to D.C. Code § 32-1308(a)(1)(A)(i)-(ii), Plaintiffs are entitled to recover the payment of any back wages unlawfully withheld and liquidated damages equal to treble the amount of unpaid wages for the Defendant's failure to pay overtime compensation.

84. Plaintiffs are also entitled to recover attorneys' fees and costs under D.C. Code § 32-1308(a)(1)(A).

## COUNT II
## Failure to Pay Overtime for All Hours Worked Over 40 in a Workweek in Violation of the FLSA, 29 U.S.C. § 207(a)

85. Plaintiffs repeat and incorporate by reference the factual allegations set forth in paragraphs 1-73.

86. During their employment with Defendant, Plaintiffs and all others similarly situated regularly performed overtime work in addition to their regularly scheduled 40-hours of work per week.

87. Plaintiffs and all others similarly situated have performed work activities without compensation before and after their scheduled shifts and during their unpaid meal breaks.

88. This additional, daily work has caused Plaintiffs to work in excess of 40 hours in a week without proper overtime compensation in violation of the FLSA, 29 U.S.C. § 207(a).

89. Likewise, Defendant has failed to compensate Plaintiffs at a rate of 1.5 times their regular rate of pay for all hours worked during a snowstorm in January 2026, as required by the FLSA and related regulations. 29 U.S.C. § 207(a); 29 C.F.R. § 785.22(a); 29 C.F.R. § 785.22(b).

90. Defendant's violations of the FLSA as alleged herein have been done in a willful or bad faith manner.

91. As a result of the aforesaid willful or bad faith violations of the FLSA, compensation has been unlawfully withheld by Defendant from Plaintiffs and similarly situated employees for which the Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, reasonable attorneys' fees, and the costs of this action.

92. The employment and work records for Plaintiffs and those similarly situated are in the exclusive possession, custody, and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to them or to those similarly situated. Defendant is under a duty imposed by 29 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiffs' payroll and other employment records and such records from

those who are similarly situated from which the amounts of the Defendant's liability can be ascertained.

**COUNT III**
**Failure to Pay Overtime in a Timely Manner in Violation of the FLSA, 29 C.F.R. § 778.106**

93. Plaintiffs repeat and incorporate by reference the factual allegations set forth in paragraphs 1-73.

94. The FLSA mandates that all overtime wages be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owed, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106; *see also Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, No. 7:17-cv-07804-NSR, 2022 WL 195514, at *4 (S.DN.Y. Jan. 21, 2022) (quoting *Coley v. Vanguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018)) ("[S]everal courts have held that it is a violation of the FLSA to withhold employees' overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'").

95. At all relevant times, Defendant has denied Plaintiffs and similarly situated employees the prompt payment of overtime wages required by the FLSA by failing to pay Plaintiffs and those similarly situated all wages owed, including overtime wages, on their regular paydays.

96. Defendant regularly pays Plaintiffs and all others similarly situated for overtime more than two pay periods after they were worked.

97. Defendant's violations of the FLSA as alleged herein have been done in a willful and bad faith manner.

98. As a result of the aforesaid willful and bad faith violations of the FLSA, compensation has been unlawfully withheld by Defendant from Plaintiffs and similarly situated employees for which the Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, reasonable attorneys' fees and the costs of this action.

99. The employment and work records for Plaintiffs and those similarly situated are in the exclusive possession, custody, and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to them or to those similarly situated. Defendant is under a duty imposed by 29 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiffs' payroll and other employment records and such records from those who are similarly situated from which the amounts of the Defendant's liability can be ascertained.

## **DEMAND FOR A JURY TRIAL**

Plaintiffs, on behalf of themselves and all Class and Collective members, demand trial before jury on all issues.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court:

(a) Certify a class action pursuant to Rule 23(b)(3);

(b) Enter a judgment declaring that Defendant violated D.C. Code §§ 32-1001 *et seq.*, and 29 U.S.C. §§ 201 *et seq*.

(c) Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(d) Award Plaintiffs backpay for their unpaid compensation;

(e) Award Plaintiffs monetary liquidated damages equal to the amount of late paid compensation;

(f) Award Plaintiffs monetary liquidated damages equal to treble the amount of unpaid compensation;

(g) Award statutory penalties;

(h) Award interest;

(i) Award costs and reasonable attorney's fees, computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services in the District of Columbia, as provided in D.C. Code § 32-1308.02;

(j) Grant such other relief as may be just and proper.

Dated: October 14, 2026

Respectfully submitted,

*/s/ David Ricksecker*

David Ricksecker (D.C. Bar No. 483019)
Gregory K. McGillivary (D.C. Bar No. 411029)
Callie E. Dydo (D.C. Bar No. 90042579) (*application for admission pending*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
dr@mselaborlaw.com
gkm@mselaborlaw.com
ced@mselaborlaw.com

*Counsel for Plaintiffs*